UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL & JACQUELINE L. WOELFEL, § § | |
| *Plaintiffs*, § § | |
| v. § | CIVIL ACTION H-13-893 |
| § | |
| GMAC MORTGAGE COMPANY, LLC, *et al.*, § § | |
| *Defendants.* § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendants Federal National Mortgage Association ("Fannie Mae") and Green Tree Servicing, LLC's ("Green Tree" and together with Fannie Mae, the "defendants") Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted (Dkt. 3), and plaintiffs Michael Woelfel and Jacqueline L. Woelfel's (the "Woelfels") response. Dkt. 11. After considering the motion, response, record evidence, and applicable law, defendants' motion to dismiss (Dkt. 3) is **GRANTED IN PART & DENIED IN PART**.

**I. BACKGROUND**

On July 24, 2008, the Woelfels signed a Texas Home Equity Note for the principal amount of $255,200.00, which was secured by their home on Buttercup Lane in Kingwood, Texas.[1] Dkt. 1, Ex. A to Ex. B-4. The Woelfels also executed a HUD-1 settlement statement at the time they signed the note in 2008.[2] Dkt. 1, Ex. E (HUD-1 settlement statement) to Ex. B-4 at 1–2.

---

[1] Fannie Mae is the current owner and holder of the note. Dkt. 1 (notice of removal) at 2 ¶ 1. GMAC Mortgage Company, LLC ("GMAC") was the original servicer, but effective February 1, 2013, GMAC transferred servicing duties to Green Tree. *Id.*; Dkt. 1, Ex. C (letter from Green Tree) to Ex. B-1 (original petition) at 1. GMAC did not join the defendants' removal because the Woelfels non-suited GMAC after filing their first amended petition in March 2013. Dkt. 1, Ex. B-6 (order of non-suit) at 1.

[2] A "HUD-1 settlement statement" is a settlement form used in closing a property sale which itemizes the costs and fees associated with a mortgage loan. *See United States v. Gaudin*, 515 U.S. 506, 508, 115 S. Ct. 2310 (1995); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1319 n. 2 (11th Cir. 2008).

Then, at some time after the loan was signed, the Woelfels fell behind on their payments. Dkt. 3 at 2 ¶ 2. On October 5, 2012, GMAC filed an application with the Harris County District Court and requested the authority to conduct a non-judicial foreclosure on the Woelfels' home. Dkt. 11 at 1 ¶ 1. While GMAC was pursuing this option, the Woelfels' counsel sent GMAC and Green Tree a letter on March 4, 2013, which detailed five alleged violations under the Texas Constitution and demanded that the violations be cured within sixty days. *See* Dkt. 1, Ex. B-4 at 4 ¶ 15; Dkt. 1, Ex. D (notice of request to cure) to Ex. B-4 at 1–2. On the same day, the Woelfels filed the instant case against defendants in state court. Dkt. 1, Ex. B-1. On April 4, 2013, defendants removed the case to this court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. 1 at 1.

The Woelfels allege that defendants violated the Texas Constitution's provisions regarding home equity loans. Dkt. 1, Ex. B-4 at 1 ¶ 1; TEX. CONST. art. XVI, § 50(a)(6). They claim that their loan is invalid because (1) the loan required a fee payment in excess of the 3% constitutional cap, *see* § 50(a)(6)(E); (2) the principal amount of the loan was greater than 80% of the home's fair market value,[3] *see* § 50(a)(6)(B); (3) the Woelfels did not receive a copy of the final loan documents at closing, *see* § 50(a)(6)(Q)(v); (4) the Woelfels were unaware of the three-day right to abandon the home equity loan without penalty, *see* § 50(a)(6)(Q)(viii); and (5) an acknowledgment was not executed between the Woelfels and the lender as to the fair market value of the home on the date the extension of credit was made, *see* § 50(a)(6)(Q)(ix). Dkt. 1, Ex. B-4.

The Woelfels further argue that defendants' failure to cure the constitutional violations within sixty days of notification requires forfeiture of all principal and interest pursuant to section

---

[3] The Harris County Appraisal District ("HCAD") calculated the home's 2008 market value to be $260,629.00. *See* Dkt. 1, Ex. F (HCAD report) to Ex. B-4 at 1. Accepting this figure as the home's "fair market value" in July 2008, the Woelfels contend that the principal loan amount of $255,200.00, which is 98% of the 2008 HCAD market value, violated the 80% limit imposed by the Texas Constitution. Dkt. 1, Ex. B-4 at 6.

50(a)(6)(Q)(x). Dkt. 1, Ex. B-4 at 7 ¶ 16. Accordingly, the Woelfels seek (1) a declaratory judgment that Fannie Mae forfeit all principal and interest on the note because it failed to cure the constitutional defects in a timely manner, rendering the lien void; and (2) a permanent injunction that would enjoin defendants and their agents from interfering with the Woelfels' right to quiet enjoyment of the property. Dkt. 1, Ex. B-4 at 9–11. Further, the Woelfels seek money damages, a judgment quieting title in their favor, and attorneys' fees. *Id.* at 11–13.

On April 8, 2013, defendants filed a motion to dismiss, asserting that (1) the Woelfels wrongfully based their § 50(a)(6)(B) claim on the 2008 HCAD market value; and (2) the Woelfels' § 50(a)(6)(E) claim for excessive fees fails as matter of law because they included county taxes in their calculation, which defendants argue are not cognizable "fees" under § 50(a)(6)(E). Dkt. 3 at 4–7. The Woelfels responded, and the motion is ripe for consideration.

## II. ANALYSIS

*A.    Legal Standard*

In considering a motion to dismiss for failure to state a claim, the court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court generally considers the pleadings alone, including documents attached to the complaint, in evaluating whether plaintiff has stated a claim to survive Rule 12(b)(6). *In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  However, the court may consider matters outside the pleadings when either (1) the evidence is subject to judicial notice; or (2) the evidence is attached to the motion to dismiss, is referenced in the pleading, and is central to the complainant's claim.  *Id.*; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007) (reminding courts that they may "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

### B.     *Eighty-Percent Rule Under Section 50(a)(6)(B)*

In a 1997 general referendum, Texas voters approved constitutional amendments to allow homeowners to take out a home loan secured by the equity in their homestead.  § 50(a)(6).  Referring to the relatively recent acceptance of home equity loans, the Texas Supreme Court has explained:

> For over 175 years, Texas has carefully protected the family homestead from foreclosure by limiting the types of liens that can be placed upon homestead property.  Texas became the last state in the nation to permit home-equity loans when constitutional amendments voted on by referendum took effect in 1997.  Such loans permit homeowners to use the equity in their home as collateral to refinance the terms of prior debt and secure additional loans at rates more favorable than those for consumer loans.  Although home-equity lending is now constitutionally permissible, article XVI, section 50(a)(6) of the Texas Constitution still places a number of limitations on such lending.

*LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 618 (Tex. 2007) (per curiam).  Among the limitations placed on such lending is the provision generally known as the eighty-percent rule.  This provision provides, in pertinent part:

> The homestead . . . is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that . . . is of a principal amount that when added to the aggregate total of the

4

>outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made.

§ 50(a)(6)(B).

The Woelfels allege that their $255,200.00 home equity loan was greater than eighty percent of their home's fair market value. Dkt. 1, Ex. B-4 at 6. To support their claim, the Woelfels pled that HCAD estimated the 2008 market value for the property to be $260,629.00. *Id.* Because the principal amount of the loan, $255,200.00, is in excess of $208,556.80 (eighty-percent of the HCAD market value), the Woelfels allege that the loan violated the Texas Constitution. *Id.*

Defendants, on the other hand, argue that the HCAD market valuation report is legally incompetent evidence of the home's fair market value when determining compliance with § 50(a)(6)(B). Dkt. 3 at 5 ¶ 9 (citing *Hous. Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.)). In *Fisher*, the Texas court of appeals held that the appraisal district's estimate, which was determined without participation of the landowner, is not evidence of residential value for any purpose other than taxation. *Id.* at 686. The court further explained that "[e]xclusion of such testimony is also considered a rule of practicality, since tax assessments rarely reflect the true market value." *Id.* at 686–87.

Defendants rest their legal argument on *Fisher*'s reasoning, but it is unclear whether *Fisher* remains persuasive in light of recent case law from other Texas appellate courts. *See Warriner v. Warriner*, 394 S.W.3d 240 (Tex. App.—El Paso 2012, no pet.); *Smith v. Grayson*, No. 03-10-00238-CV, 2011 WL 4924073, at *11 (Tex. App.—Austin Oct. 12, 2011, pet. dism'd w.o.j.). These cases tend to show that an appraisal district's valuation can have probative value in certain circumstances, questioning the viability of *Fisher*'s general exclusion of such evidence. *Warriner*, 394 S.W.3d at 253 n. 12; *Grayson*, 2011 WL 4924073 at *11.

*In re Marriage of Scott*, 117 S.W.3d 580 (Tex. App.—Amarillo 2003, no pet.) provides further contrast to *Fisher*. In *Scott*, a divorce case, the wife presented evidence of the marital home value based on the county appraisal district's market valuation. *Id.* at 585. While the court of appeals held this evidence to be factually insufficient because the valuation was over three years old on the date of trial and two experts assessed the property at a higher value, the court did not hold that tax appraisals are *legally* insufficient evidence of market value. *Id.*

The court finds that the Woelfels may allege HCAD's estimated market value of their home in support of their claim at the pleadings stage, and thus the defendants' motion to dismiss the § 50(a)(6)(B) claim is **DENIED**.

## C.     *The Section 50(a)(6)(E) Fee Cap*

Another provision of § 50(a)(6), generally referred to as the three-percent fee cap, provides that a home equity loan must not:

> require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the principal amount of the extension of credit.

§ 50(a)(6)(E).

The Woelfels contend that they were charged more than $7,656.00 in fees at the time of closing, which is three percent of the $255,200.00 loan. Dkt. 1, Ex. B-4 at 4–6. To support their fee-cap claim, the Woelfels cite the HUD-1 settlement statement provided to them when they executed the note. Dkt. 1, Ex. E to Ex. B-4 at 1–2. As a threshold matter, all parties agree that certain closing fees, which total $7,291.30,[5] come within § 50(a)(6)(E) and are below the three-

---

[5] The defendants listed the undisputed settlement charges subject to the 3% rule as totaling $7,279.30. *See* Dkt. 3 at 7 ¶ 13. However, based on the figures provided by the parties from the settlement statement, the court calculates the undisputed amount at a slightly higher figure, $7,291.30. *See, e.g.*, *id.* at 6–7 ¶ 12.

6

percent cap. The Woelfels, however, contend that the $501.12 in Harris County taxes should also be characterized as a fee under § 50(a)(6)(E). Dkt. 1, Ex. B-4 at 6. Hence, the Woelfels maintain that the fees charged equal $7,792.42, a value which exceeds the cap. *Id.* at 4–6. Defendants respond that county taxes are not subject to the three-percent rule under Texas law because the taxes are not "necessary to originate" the loan within the meaning of § 50(a)(6)(E). Dkt. 3 at 5–7.

In short, the parties dispute whether the Woelfels were required to pay "fees . . . necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the principal amount of the extension of credit." § 50(a)(6)(E). When interpreting the Texas Constitution, the Texas Supreme Court has held that a reviewing court should "rely heavily on [the provision's] literal text and must give effect to its plain language." *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000). Similar to general statutory construction, the *Stringer* court explained that constitutional text should be given the effect its makers and adopters intended, and courts should avoid a construction that renders a constitutional provision superfluous or inoperative. *Id.*

The parties have not cited, nor has the court found, a case addressing whether county taxes are fees under the plain meaning of § 50(a)(6)(E). But in interpreting this constitutional provision, the court relies on the reasoning of a Fifth Circuit opinion addressing a similar argument regarding hazard insurance premiums. *Doody v. Ameriquest Mortg. Co.*, 242 F.3d 286 (5th Cir. 2001). In *Doody*, the Fifth Circuit held that hazard insurance premiums, even when required by the lender as part of the extension of credit, were not fees within the meaning of § 50(a)(6)(E). *Id.* at 289. The *Doody* court, bearing in mind the Texas Supreme Court's instruction to construe the Constitution so as not to render a provision meaningless, explained that the fee-cap rule applies only to charges that are required by the lender *and* "necessary to originate" the loan. *Id.* (citing § 50(a)(6)(E)).

Hazard insurance does not meet both of these requirements because the premium "is only 'necessary to originate' [the loan] in the sense that the lender required it." *Id.* The court rejected the plaintiff's alternative construction because it "would render 'necessary to originate' redundant and therefore meaningless and inoperative." *Id.*

Similar to hazard insurance premiums, county taxes are only "necessary to originate" the Woelfels' loan in the sense that the lender required payment before the extension of credit. Thus, county taxes are necessary payments to a taxing authority unrelated to home equity lending and not "necessary to originate" an extension of home equity credit. Consistent with the Fifth Circuit's guidance in *Doody*, the court holds that county taxes are not fees that count towards the three-percent fee cap of § 50(a)(6)(E). Consequently, because the remaining fees do not exceed the cap, the defendants' motion to dismiss the § 50(a)(6)(E) claim is **GRANTED**.

### III. Conclusion

For the foregoing reasons, the defendants' motion to dismiss (Dkt. 3) is **GRANTED IN PART & DENIED IN PART**. The motion to dismiss the § 50(a)(6)(E) fee-cap claim is **GRANTED**, and the motion to dismiss the § 50(a)(6)(B) claim regarding the 80% rule is **DENIED**.

It is so **ORDERED**.

Signed at Houston, Texas on September 9, 2013.

_____
Gray H. Miller
United States District Judge